UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

JEAN MARIE TORRES-MONTOYA and
DENNIS WILLIAM MONTOYA,                                    Case No. 17-11823 ta7

    Debtors.

DENNIS O'BRIEN,

    Plaintiff,

v.                                                          Adv. No. 17-1080

DENNIS WILLIAM MONTOYA,

    Defendant.

## **OPINION**

Before the Court is Defendant's motion for judgment on the pleadings, seeking dismissal of Plaintiff's § 523(a)(2)(A) claim. Having reviewed the motion, the response thereto, and the applicable law, the Court concludes that the motion is well taken, but that the Plaintiff should be given the opportunity to amend his complaint.

### I.    FACTS

For the limited purpose of ruling on the motion, the Court takes the following allegations as true:[1]

    1.    Defendant resides in New Mexico and is one of the Debtors in this case.

    2.    Plaintiff also resides in New Mexico.

---

[1] The Court took judicial notice of the docket in this bankruptcy case and in the federal and state court cases involving the parties. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket").

3. This is a core proceeding.

4. This Court has jurisdiction over the parties and the subject matter.

5. Debtors filed their chapter 7 petition on July 17, 2017.

6. On November 4, 2002, Plaintiff, a sergeant in the Santa Fe County Sheriff's Department, shot Walter Mitchell, who was intoxicated, mentally ill, and threatening Plaintiff and others with a sword. *Walter Mitchell v. City of Santa Fe and Dennis O'Brian*, No. CIV-05- 01155 JB/LAM (D.N.M.) (hereinafter *Mitchell v. City of Santa Fe*). Mitchell was subsequently found guilty but mentally ill of two felonies, including assault with a deadly weapon. *See State of New Mexico v. Mitchell*, First Judicial District Court, State of New Mexico, No. D-101-CR- 2002-1027.

7. On November 2, 2005, Defendant filed a civil rights action on behalf of Mitchell in the United States District Court for the District of New Mexico naming as defendants the City of Santa Fe, the Santa Fe Police Department and Dennis O'Brian (sic), an officer of the Santa Fe Police Department individually. *See Mitchell v. City of Santa Fe*.

8. The *Mitchell v. City of Santa Fe* complaint contained allegations Defendant knew were false, misnamed defendants, and omitted material facts. Defendant's actions in the prosecution of *Mitchell v. City of Santa Fe* were rife with improper use of process, including filing complaints without probable cause, procedural irregularities and improprieties in the service of the complaints, soliciting false testimony at trial, and numerous misrepresentations to the court, all designed to deprive Plaintiff (and his employer, the County of Santa Fe) of notice of the claim and the court of the true circumstances of the case so that Defendant could obtain an improper default judgment.

9. Ultimately, the false complaint resulted in a default judgment against Plaintiff. A damages trial was held. During the damages trial, Defendant elicited testimony from Mitchell that Defendant knew was false.

10. Based on this false testimony, the jury awarded $3,000,000.00 in damages against Plaintiff. Defendant did not inform Plaintiff or the County of Santa Fe of the judgment, despite promising the court he would do so.

11. Two years later, Plaintiff discovered the judgment against him. Plaintiff and the County of Santa Fe immediately filed an action to correct the injustice, which resulted in a settlement that included the federal court vacating the judgment against Plaintiff *ab initio*.

12. On December 22, 2011, Plaintiff filed an action in New Mexico state court alleging a malicious abuse of process claim against Defendant based on Defendant's intentional misuse of the judicial process to obtain the improper judgment against him.

13. The state court granted summary judgment in favor of Plaintiff, finding that in *Mitchell v. The City of Santa Fe*, Defendant:

- Filed complaints without probable cause;
- Committed numerous procedural improprieties and irregularities;
- Proffered false testimony;
- Showed a lack of candor to the court; and
- Committed fraud on the court.

14. Following a damages hearing, the state court entered judgment for Plaintiff that awarded compensatory damages of $192,000.00 and punitive damages of $384,000.00.

15. Defendant appealed, asserting, in part, that Plaintiff's complaint was untimely. The New Mexico Court of Appeals held that there were disputed issues of material fact concerning whether Plaintiff's complaint was timely under the discovery rule that precluded summary judgment and remanded the case for resolution of these factual questions by the factfinder.

16. The remanded case was set for a bench trial beginning on July 24, 2017. On July 17, 2017, a week before trial was scheduled to commence, Defendant filed the instant bankruptcy proceeding.

17. Defendant, a former attorney, has a lengthy history of abuse and misuse of the

judicial system. On November 9, 2011, the Supreme Court of New Mexico suspended Defendant from the practice of law based on what it called "a deeply troubling mosaic of ethical misconduct" that "unquestionably calls for discipline and seriously calls into question Defendant's fitness to practice law." *See In The Matter of Dennis W. Montoya*, *an Attorney Suspended from the Practice of Law in the Courts of the State of New Mexico*, 2011-NMSC-042, 150 N.M. 731.

18. Defendant stipulated to seventy-four violations of the Rules of Professional Conduct, including numerous instances of knowingly making false statements of fact and law to the court, knowing making material omissions to the court, failing to correct false statements of material fact or law previously made to the court, filing frivolous litigation, and failing to adequately supervise his staff. *Id.*

19. Defendant made representations to Plaintiff which were false, which Defendant knew were false when he made them, with which Defendant intended to deceive Plaintiff, on which Plaintiff justifiably and reasonably relied, which proximately caused and caused in fact actual damages to Plaintiff.

20. Defendant's conduct as described above constitutes fraud within the meaning of 11 U.S.C. §523(a)(2)(A), and a willful and malicious injury to the property of Plaintiff within the meaning of 11 U.S.C. §523(a)(6).

21. Defendant committed actual fraud against the Plaintiff. Defendant misrepresented numerous matters of fact to the U.S. District Court in order to obtain a judgment against Plaintiff which would never have been entered but for his false representations, his concealments and his suborning of perjury.

22. Defendant acted with a subjective intent to deceive the Court and the Plaintiff.

23. Defendant willfully and maliciously injured Plaintiff.

24. Plaintiff has been damaged in an amount to be determined at trial.

## II. DISCUSSION

A. Rule 12(c).

A recent New Mexico district court case discussed Rule 12(c):[2]

> Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed" but early enough not to delay trial, a party may move for judgment on the pleadings. A motion under Rule12(c) is generally treated in the same manner as a Rule 12(b)(6) motion to dismiss. *Mock v. T.G.&Y Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992). In reviewing a motion to dismiss, the Court accepts all well-pleaded factual allegations in the complaint as true and then determines whether the complaint plausibly states a legal claim for relief. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

*Humane Society of the United States v. Kienzle*, 2017 WL 5151305, at *1 (D.N.M.) (Hon. William P. Johnson).

"Dismissal on the pleadings is generally appropriate only if "'it appears beyond doubt that [P]laintiff can prove no set of facts in support of [the] claim[s] which would entitle him to relief.'" *Ramirez v. Dep't of Corr., Colo.,* 222 F.3d 1238, 1240 (10th Cir. 2000), quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

> Although a court must assume the truth of the properly alleged, or "well-pleaded," facts in the complaint, it has no obligation to accept conclusory allegations as true. *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009). Claims dismissed pursuant to a Rule 12(c) motion are dismissed with prejudice. *See Pena v. Greffett*, 110 F. Supp. 3d 1103 (D.N.M. 2015).

*Crockett v. Farmers Ins. Co. of Ariz.,* 2017 WL 4480747, at *2 (D.N.M.).

With respect to the legal standards used to consider Rule 12(b)(6) motions, Magistrate Judge Jerry Ritter recently provided this summary:

> In reviewing a motion to dismiss under Rule 12(b)(6), the undersigned is directed to review the complaint for plausibility. *Alvarado v. KOB–TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir. 2007). In particular, the Court "look[s] to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Id.* at 1215, n. 2. The question is not whether the claim is "improbable," but whether the factual allegations are sufficient to "raise a right to

---
[2] Citations to a "Rule" are to a Federal Rule of Civil Procedure, the relevant ones of which are incorporated by reference by the 7000 series of the Federal Rules of Bankruptcy Procedure.

-5-
Case 17-01080-t    Doc 14    Filed 12/22/17    Entered 12/22/17 09:37:34 Page 5 of 12

relief above the speculative level." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *Bell Atl. Corp.,* 550 U.S. 544 (2007)). A court must accept all well-pleaded allegations within the complaint as true and construe them in the light most favorable to the plaintiff. *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017); *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir.1996).

*Henry Ortiz, et al., v. New Mexico Dept. Cultural Affairs*, 2017 WL 6375618, at *3 (D.N.M.).

B.  § 523(a)(2)(A).

This section excepts from discharge "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . ." On its face, the section is not difficult to understand: If a debtor defrauded a creditor out of $100, then the resulting debt for $100 would be nondischargeable.

The Supreme Court added complexity to the reading of the section with *Cohen v. de la Cruz*, 523 U.S. 213 (1998). In that case, the debtor owed not only the $100 (to use the Court's example) but an additional $200 in punitive damages, and $50 in attorney fees. How much of the $350 in total damages is nondischargeable? The Supreme Court ruled that the entire amount is. The Supreme Court stated:

> [T]he phrase "to the extent obtained by" in § 523(a)(2)(A) . . . does not impose any limitation on the extent to which "any debt" arising from fraud is excepted from discharge. "[T]o the extent obtained by" modifies "money, property, services, or ... credit"—not "any debt"—so that the exception encompasses "any debt ... for money, property, services, or ... credit, to the extent [that the money, property, services, or ... credit is] obtained by" fraud. The phrase thereby makes clear that the share of money, property, etc., that is obtained by fraud gives rise to a nondischargeable debt. Once it is established that specific money or property has been obtained by fraud, however, "any debt" arising therefrom is excepted from discharge.

523 U.S. at 218. It summarized its holding as follows:

> In short, the text of § 523(a)(2)(A), the meaning of parallel provisions in the statute, the historical pedigree of the fraud exception, and the general policy underlying the exceptions to discharge all support our conclusion that "any debt ... for money, property, services, or ... credit, to the extent obtained by" fraud encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor.

-6-

523 U.S. at 223.

The language quoted above follows the § 523(a)(2)(A) requirement that the debt at issue be for money the debtor obtained by fraud. Other language in the opinion, however, is less clear on this "receipt of benefits" requirement. *See, e.g.,* 523 U.S. at 218 ("§ 523(a)(2)(A) . . . does not impose any limitation on the extent to which 'any debt' arising from fraud is excepted from discharge"), and 523 U.S. at 222 ("§ 523(a)(2)(A) bars the discharge of all liability arising from the fraud . . . ."). Lower courts have seized on this latter language as the basis for dispensing with the "receipt of benefits" requirement, and have held debts nondischargeable even when the debtor got nothing from his fraud. The 5th Circuit's ruling in *Deodati v. M.M. Winkler & Assoc. (In re M.M. Winkler & Assoc.),* 239 F.3d 746 (5th Cir. 2001), is illustrative:

> A more recent Supreme Court case also suggests that receipt of benefits is irrelevant to whether innocent debtors may discharge fraud liability. In *Cohen v. de la Cruz,* the Court held that § 523(a)(2)(A) prevents debtors from discharging statutory and punitive fraud damages. *See Cohen v. de la Cruz,* 523 U.S. 213, 220, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). The Court rejected a fraud perpetrator's contention that he could discharge any liability above the amount he received. *See id.* at 222, 118 S.Ct. 1212. It held that "[o]nce it is established that specific money or property has been obtained by fraud ... 'any debt' arising therefrom is excepted from discharge." *Id.* at 218-19, 118 S.Ct. 1212. It relied on a "straightforward reading" of the statute and on legislative intent to make fraud victims whole. *See id.* at 217-220, 118 S.Ct. 1212. *Cohen* indicates that whether the debt arises from fraud is the only consideration material to nondischargeability. It also indicates that we should not read requirements like receipt of benefits into § 523(a)(2)(A) and that the discharge exceptions protect fraud victims rather than debtors.

239 F.3d at 746. *See also Ghomeshi v. Sabban (In re Sabban),* 600 F.3d 1219, 1222 (9th Cir. 2010); *Hawthorne Credit Union v. Quick (In re Quick),* 2012 WL 260050, at *2 (Bankr. N.D. Ill.); *Ludwig & Robinson, PLLC v. Yelverton (In re Yelverton),* 2009 WL 3857412, at *1 (Bankr. D.D.C.); *Marks v. Hentges (In re Hentges),* 373 B.R. 709, 728–29 (Bankr. N.D. Okla. 2007).

The Fourth Circuit presents the alternative (and in this Court's view, better) analysis:

> The key in *Cohen* is that the debtor obtained something through his fraud. The Court requires at the threshold that the debtor gain something: "Once it is

-7-

established that specific money or property has been obtained by fraud, however, 'any debt' arising therefrom is excepted from discharge." *Id.* The Court clarified its holding by stating that subsection (a)(2)(A) "is best read to prohibit the discharge of any liability arising from a debtor's fraudulent *acquisition* of money, property, etc., including an award of treble damages for fraud." *Id.* at 221, 118 S.Ct. 1212 (emphasis added). Admittedly, the Court states several times that the subsection "bars the discharge of *all* liability arising from fraud," but in each example the Court uses to illustrate its point, the debtor has fraudulently obtained money or property from the creditor. *Id.* at 222, 118 S.Ct. 1212 (emphasis added). Although *Cohen* expands the notion of debt in the context of the fraud exception, it still requires that the debtor have obtained something from the creditor for that debt to qualify for the exception.

*Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 221-22 (4th Cir. 2007). The Fourth Circuit makes two important points: first, the debtor must obtain something of value by the fraud, and second, the something of value must be obtained from the creditor seeking a nondischargeability judgment.

The Tenth Circuit has not ruled on the "receipt of benefits" issue. The Tenth Circuit Bankruptcy Appellate Panel recently held, however, that to prevail in a § 523(a)(2)(A) actual fraud claim, a creditor must prove that "the debtor obtained money, property, services, or credit by the actual fraud." *Thompson*, 555 B.R. at 10. It did not address whether the benefit must come from the creditor.

Based on a review of the cases outlined above, the Court concludes that a plaintiff seeking to obtain a nondischargeability judgment against a debtor based on an alleged actual fraud[3] must show:

1. A valid debt. As stated in *Thompson*:

Dischargeability actions require a two-part analysis: first, the bankruptcy court must determine the validity of the debt under applicable law (the claim on the debt) [footnote omitted]; and second, the bankruptcy court must determine the

---

[3] Plaintiff's complaint does contain an allegation that Defendant made false representations to Plaintiff that Plaintiff relied upon. However, the allegations in general paint a picture of a fraudulent scheme that did not involve Defendant making representations to Plaintiff, so the Court analyzed the claim as an actual fraud claim rather than a false representation claim. This decision does not foreclose Plaintiff's right to pursue a false representation claim.

-8-

dischargeability of that debt under § 523 (the dischargeability claim) [footnote omitted].

555 B.R. at 8.

2. <u>Actual Fraud</u>. Plaintiff must establish that an "actual fraud" occurred. The Supreme Court declined to define "actual fraud," although it stated that the word "fraud" connotes deception or trickery. *Husky Intern. Electronics, Inc. v. Ritz,* 136 S. Ct. 1581, 1586 (2016).[4] The Tenth Circuit Bankruptcy Appellate Panel has held that "actual fraud" includes "a scheme to deprive or cheat another of property or legal right." *Diamond v. Vickery (In re Vickery)*, 488 B.R. 680, 690 (10th Cir. BAP 2013); *Thompson,* 555 B.R. at 11. A treatise states:

> Actual fraud consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception.

4 *Collier on Bankruptcy* ¶ 523.08[1][e] (16th ed.)

3. <u>The debtor obtained a benefit from the creditor by the fraud</u>. This is a key point, and one disputed in the case law. As discussed above, there is a circuit split on whether the debtor must benefit from the fraud, and if so whether the benefit from come in part from the creditor seeking the nondischargeable judgment. The Court believes that the Fourth Circuit's decision in *Rountree* is better reasoned, is based on a more accurate reading of *Cohen*, and follows § 523(a)(2)(A) more faithfully. The Court therefore holds that an element of a § 523(a)(2)(A) claim is that the debtor must obtained a benefit from the creditor by the fraud.

4. <u>The balance of the creditor's debt "arose from" the fraud</u>. Finally, *Cohen* held that once the creditor establishes that the debtor got money from the creditor by fraud, all damages

---

[4] For a good analysis of the *Husky* opinion and related § 523(a)(2)(A) issues, *see* David Koha, *When Fraud Results in a Nondischargeable Debt: the Scope of 11 U.S.C.A. § 523(a)(2)(A) After Husky Inter. Electronics v. Ritz*, 2017 Norton Ann. Serv. of Bankr Law 13. The Court found Mr. Koha's review of the current § 523(a)(2)(A) case law thorough and helpful.

-9-

"arising from" the fraud are nondischargeable. *Cohen,* 523 U.S. at 218.[5] This allows the creditor to obtain a nondischargeable judgment not only for actual losses, but also for punitive damages, attorney fees, and the like. *Cohen,* 523 U.S. at 218.

C.      Sufficiency of the § 523(a)(2)(A) Claim in This Proceeding.

    1.      Is there a debt? As an initial matter, Plaintiff must allege that he has a valid claim against the Defendant. The allegations in the complaint are sufficient for this purpose. Plaintiff alleges that Defendant willfully and maliciously injured him and caused him damages, in an amount to be determined at trial.

    2.      Actual fraud. Next, Plaintiff must allege that Defendant committed actual fraud. Plaintiff's allegations are sufficient in this regard. Plaintiff alleges that Defendant intentionally brought a false claim against him, intentionally failed to serve him with process, and maneuvered subsequent events so Mr. Mitchell could obtain a substantial money judgment against Plaintiff without Plaintiff's knowledge or ability to defend himself. Together, these allegations allege an "actual fraud."

    3.      Did Defendant obtain some money from Plaintiff by the fraud? Third, Plaintiff must allege that Defendant obtained money, property, services, or credit from him by the actual fraud. The complaint does not contain any such allegation. The complaint alleges that Plaintiff was

---

[5] *Cohen* could be read to require that the other damages must "arise from" the money obtained by fraud. That reading is consistent with the language of § 523(a)(2)(A), and the Supreme Court twice characterizes its ruling in those terms. 523 U.S. at 218 and 223. However, treble damages, punitive damages, and the like, really can't be said to "arise from" compensatory damages. Rather, they "arise from" the fraud. Elsewhere in *Cohen* the Supreme Court tacitly admits this. *See, e.g.,* 523 U.S. at 218 and 222. The Court, like other cases decided after *Cohen*, holds that it is sufficient if the creditor alleges that his other damages arose from the alleged fraud. *See, e.g., Thompson,* 555 B.R. at 13.

damaged by Defendant's fraud, but not that Defendant benefited, nor that the benefit came from Plaintiff.[6]

    4.    <u>Does the balance of debt arise from the fraud?</u> Finally, Plaintiff must allege that the rest of his debt arose from the fraud. Plaintiff's allegations are sufficient to satisfy the "arising from" requirement.

Of the four requirements outlined above, Plaintiff's complaint satisfies three.

D.    <u>Opportunity to Amend</u>.

Generally, courts dismissing claims under Rule 12(b)(6) should give plaintiffs an opportunity to fix pleading deficiencies with amended complaint. *See Salibra v. Supreme Court of Ohio*, 730 F.2d 1059, 1062 (6th Cir. 1984) (12(b)(6) dismissal inappropriate without opportunity to amend); *U.S. Surgical Corp. v. Orris, Inc.,* 5 F. Supp. 2d 1201, 1213 (D. Kan. 1998) (plaintiff should be given an opportunity to amend unless is it patently obvious that an amendment would be futile). Thus, the Court will allow Plaintiff until January 10, 2018, to file an amended complaint that cures the pleading deficiency identified above.

### III.    <u>CONCLUSION</u>

Plaintiff's complaint does not state a cause of action under § 523(a)(2)(A) because it does not allege that Defendant obtained a benefit from Plaintiff by his alleged fraud. Defendant's motion therefore will be granted, subject to Plaintiff's right to file an amended complaint. The Court will enter a separate order.

---

[6] At the final hearing on Plaintiff's motion for relief from stay, both parties testified that Mr. Mitchell was paid between $75,000 and $100,000 in settlement. It could be that Defendant received a portion of the settlement money. Thus, it is possible that Plaintiff could allege that Defendant obtained money by the alleged actual fraud. No such allegations are in the complaint.

_____

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: December 22, 2017

Copies to:

Michael K. Daniels
P.O. Box 1640
Albuquerque, NM 87103

William F. Davis
6709 Academy Rd. NE, Ste. A
Albuquerque, NM 87109

Joel A. Gaffney
6709 Academy Rd. NE, Ste. A
Albuquerque, NM 87109