UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

JEAN MARIE TORRES-MONTOYA and
DENNIS WILLIAM MONTOYA,   Case No. 17-11823 ta7

    Debtors.

DENNIS O'BRIEN,

    Plaintiff,

v.   Adv. No. 17-1080

DENNIS WILLIAM MONTOYA,

    Defendant.

## OPINION

Before the Court is Defendant's motion to dismiss plaintiff's § 523(a)(2)(A) claim for failure to state a cause of action.[1] Having reviewed the motion and the applicable law, the Court concludes that Plaintiff has stated a cause of action under § 523(a)(2)(A). The motion therefore will be denied.

I.    FACTS

For the limited purpose of ruling on the motion, the Court takes the following allegations in Plaintiff's amended complaint as true:[2]

Defendant resides in New Mexico and is one of the debtors in this case.

---

[1] Earlier in this adversary proceeding, Defendant filed a motion to dismiss the claim under Rule 12(c). The Court granted the motion, with leave for Plaintiff to amend. The subject motion relates to Plaintiff's amended complaint. The allegations added by the amended complaint are italicized.

[2] The Court took judicial notice of the docket in this bankruptcy case and in the federal and state court cases involving the parties. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket").

Plaintiff also resides in New Mexico.

This is a core proceeding.

This Court has jurisdiction over the parties and the subject matter.

Debtors filed their chapter 7 petition on July 17, 2017.

On November 4, 2002, Plaintiff, a sergeant in the Santa Fe County Sheriff's Department, shot Walter Mitchell, who was intoxicated, mentally ill, and threatening Plaintiff and others with a sword. *Walter Mitchell v. City of Santa Fe and Dennis O'Brian*, No. CIV-05- 01155 JB/LAM (D.N.M.) (hereinafter *Mitchell v. City of Santa Fe*). Mitchell was subsequently found guilty but mentally ill of two felonies, including assault with a deadly weapon. *See State of New Mexico v. Mitchell*, First Judicial District Court, State of New Mexico, No. D-101-CR- 2002-1027.

On November 2, 2005, Defendant filed a civil rights action on Mitchell's behalf in the United States District Court for the District of New Mexico, naming as defendants the City of Santa Fe, the Santa Fe Police Department, and Dennis O'Brian (sic), an officer of the Santa Fe Police Department individually. *See Mitchell v. City of Santa Fe*.

The *Mitchell v. City of Santa Fe* complaint contained allegations Defendant knew were false, misnamed defendants, and omitted material facts. Defendant's actions in the prosecution of *Mitchell v. City of Santa Fe* were rife with improper use of process, including filing complaints without probable cause, procedural irregularities and improprieties in the service of the complaints, soliciting false testimony at trial, and numerous misrepresentations to the court, all designed to deprive Plaintiff (and his employer, the County of Santa Fe) of notice of the claim and the court of the true circumstances of the case so that Defendant could obtain an improper default judgment.

Ultimately, the false complaint resulted in a default judgment against Plaintiff. A damages trial was held. During the damages trial, Defendant elicited testimony from Mitchell that Defendant knew was false.

*On information and belief, Mitchell inherited funds which he used to pay the Defendant for Defendant's efforts in filing and prosecuting the false lawsuit against Plaintiff. Defendant thereby benefitted from his fraudulent conduct.*

Based on this false testimony, the jury awarded $3,000,000.00 in damages against Plaintiff. Defendant did not inform Plaintiff or the County of Santa Fe of the judgment, despite promising the court he would do so.

Two years later, Plaintiff discovered the judgment against him. Plaintiff and the County of Santa Fe immediately filed an action to correct the injustice, which resulted in a settlement that included the federal court vacating the judgment against Plaintiff *ab initio*.

*On information and belief, some of the County funds paid in settlement of the Mitchell claims may have gone to Defendant. Defendant thereby benefitted from his fraudulent conduct.*

On December 22, 2011, Plaintiff filed an action in New Mexico state court alleging a malicious abuse of process claim against Defendant based on Defendant's intentional misuse of the judicial process to obtain an improper judgment against him.

The state court granted summary judgment in favor of Plaintiff, finding that in *Mitchell v. The City of Santa Fe*, Defendant:

> Filed complaints without probable cause;
> Committed numerous procedural improprieties and irregularities;
> Proffered false testimony;
> Showed a lack of candor to the court; and
> Committed fraud on the court.

Following a damages hearing, the state court entered a judgment for Plaintiff that awarded compensatory damages of $192,000.00 and punitive damages of $384,000.00.

Defendant appealed, asserting, in part, that Plaintiff's complaint was untimely. The New Mexico Court of Appeals held that there were disputed issues of material fact concerning whether Plaintiff's complaint was timely under the discovery rule that precluded summary judgment and

remanded the case for resolution of the factual disputes by the factfinder.

The remanded case was set for a bench trial beginning on July 24, 2017. On July 17, 2017, a week before trial was scheduled to commence, Defendant filed the instant bankruptcy proceeding.

Defendant, a former attorney, has a lengthy history of abuse and misuse of the judicial system. On November 9, 2011, the Supreme Court of New Mexico suspended Defendant from the practice of law based on what it called "a deeply troubling mosaic of ethical misconduct" that "unquestionably calls for discipline and seriously calls into question Defendant's fitness to practice law." *See In The Matter of Dennis W. Montoya*, *an Attorney Suspended from the Practice of Law in the Courts of the State of New Mexico*, 2011-NMSC-042, 150 N.M. 731.

Defendant stipulated to 74 violations of the Rules of Professional Conduct, including numerous instances of knowingly making false statements of fact and law to the court, knowingly making material omissions to the court, failing to correct false statements of material fact or law previously made to the court, filing frivolous litigation, and failing to adequately supervise his staff. *Id.*

Defendant made representations to Plaintiff which were false, which Defendant knew were false when he made them, with which Defendant intended to deceive Plaintiff, and on which Plaintiff justifiably and reasonably relied. The misrepresentations proximately caused and caused in fact actual damages to Plaintiff.

Defendant's conduct as described above constitutes fraud within the meaning of 11 U.S.C. § 523(a)(2)(A).

Defendant committed actual fraud against Plaintiff. Defendant misrepresented numerous matters of fact to the U.S. District Court in order to obtain a judgment against Plaintiff which would never have been entered but for his false representations, his concealments, and his suborning of perjury.

-4-
Case 17-01080-t    Doc 22    Filed 05/04/18    Entered 05/04/18 15:18:47 Page 4 of 12

Defendant acted with a subjective intent to deceive the Court and Plaintiff. Defendant willfully and maliciously injured Plaintiff. Plaintiff has been damaged in an amount to be determined at trial.

## II. DISCUSSION

A. Rule 12(b)(6).

A recent New Mexico district court case discussed Rule 12(b)(6):[3]

> A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency [of] a pleading within its four corners. *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must allege facts that, if true, state a claim to relief that is plausible on its face." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2014) (internal quotation marks and citation omitted). Plausibility does not concern itself with the likelihood or probability of success on the merits; instead, the question is whether factual allegations "raise a right to relief above the speculative level." *Id.* The Court assesses plausibility by looking to the substantive law that governs the claims alleged. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012); *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). In determining whether the complaint survives a motion to dismiss, the Court must assume the truth of the facts in the pleading, take those facts in the light most favorable to the plaintiff, and assess whether they give rise to a reasonable inference that the defendant is liable in light of the applicable law. *See Mayfield*, 826 F.3d at 1255.

*Hartman v. City of Roswell and Miguel Lopez,* 2018 WL 1934193, at *2 (D.N.M.) (Hon. Kevin R. Sweazea).

> The court may dismiss a complaint under Rule 12(b)(6) for failure to state a claim if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (quoting *McKinney v. Okla. Dep't of Human Servs.*, 925 F.2d 363, 365 (10th Cir. 1991)). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.

*Nevarez v. Ramero,* 2018 WL 1831816 (D.N.M) (Hon. Robert C. Brack). "Although a court must assume the truth of the properly alleged, or "well-pleaded," facts in the complaint, it has no obligation to accept conclusory allegations as true." *Crockett v. Farmers Ins. Co. of Ariz.,* 2017

---

[3] Citations to a "Rule" are to a Federal Rule of Civil Procedure, the relevant ones of which are incorporated by reference by the 7000 series of the Federal Rules of Bankruptcy Procedure.

WL 4480747, at *2 (D.N.M.), citing *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009). The complaint "must set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action." *Tompkins v. Lifeway Christian Resources of Southern Baptist Convention,* 2018 WL 1750562, at *2 (D.N.M.) (Hon. Christina Armijo), citing *Bell Atlantic Corp v. Twombly,* 550 U.S. 544, 555 (2007).

It is permissible to plead allegations "on information and belief" where the facts are peculiarly within the possession and control of the defendant. *Wellons, Inc. v. Eagle Valley Clean Energy, LLC*, 2015 WL 7450420, at *2 (D. Colo.), quoting *Arista Records, L.L.C. v. Doe 3*, 604 F.3d 110, 120 (2nd Cir. 2010); *Walker v. THI of New Mexico at Hobbs Center,* 803 F. Supp. 2d 1287, 1333-34 (D.N.M. 2011); *Higginbottom v. Mid-Del School District,* 2016 WL 951691, at *1, n. 1 (W.D. Okla.). The Court finds that the two allegations that are plead "on information and belief" relate to facts that are peculiarly within the possession and control of Defendant.

B.  § 523(a)(2)(A).

This section excepts from discharge "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . . ." In simple cases (e.g. A convinces B to pay $100 for a fake "designer" handbag worth $10), § 523(a)(2)(A) is easy to apply. But what if A induces B to give $100 to C for the fake handbag? Or, what if A's fraud garnered $100 from B, but B suffered an additional $50 in consequential damages? Or, what if A did not get any money from B, but B has a claim against A that "arose from" A's fraud? There are many variations on the simple case that raise tricky statutory construction issues.

The Supreme Court addressed one such complexity in *Cohen v. de la Cruz*, 523 U.S. 213 (1998). In *Cohen*, the debtor attempted to discharge not only what he fraudulently obtained from

the defendant, but also a treble damages award entered to punish him for his fraud. Creditors argued that the entire amount was nondischargeable. The Supreme Court sided with the creditors:

> [T]he phrase "to the extent obtained by" in § 523(a)(2)(A) . . . does not impose any limitation on the extent to which "any debt" arising from fraud is excepted from discharge. "[T]o the extent obtained by" modifies "money, property, services, or ... credit"—not "any debt"—so that the exception encompasses "any debt ... for money, property, services, or ... credit, to the extent [that the money, property, services, or ... credit is] obtained by" fraud. The phrase thereby makes clear that the share of money, property, etc., that is obtained by fraud gives rise to a nondischargeable debt. Once it is established that specific money or property has been obtained by fraud, however, "any debt" arising therefrom is excepted from discharge.

523 U.S. at 218. The Court later summarized its holding:

> In short, the text of § 523(a)(2)(A) . . . encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor.

523 U.S. at 223.

The Supreme Court's language adheres to § 523(a)(2)(A)'s requirement that money, property, etc. must be obtained by fraud. Other language in *Cohen*, however, is less clear on this so-called "receipt of benefits" requirement. For example, the court says at one point that "§ 523(a)(2)(A) . . . does not impose any limitation on the extent to which 'any debt' arising from fraud is excepted from discharge." 523 U.S. at 218. Elsewhere, the Supreme Court states that "§ 523(a)(2)(A) bars the discharge of all liability arising from the fraud . . . ." 523 U.S. at 222. Some lower courts have construed these statements as doing away with the "receipt of benefits" requirement. For example, in *Deodati v. M.M. Winkler & Assoc. (In re M.M. Winkler & Assoc.),* the court stated:

> A more recent Supreme Court case . . . suggests that receipt of benefits is irrelevant to whether innocent debtors may discharge fraud liability. In *Cohen v. de la Cruz,* the Court held that . . . whether the debt arises from fraud is the only consideration material to nondischargeability . . . . [*Cohen*] indicates that we should not read requirements like receipt of benefits into § 523(a)(2)(A) and that the discharge exceptions protect fraud victims rather than debtors.

239 F.3d 746, 746 (5th Cir. 2001). *See also Ghomeshi v. Sabban (In re Sabban),* 600 F.3d 1219, 1222 (9th Cir. 2010) (no 'receipt of benefits' element); *Hawthorne Credit Union v. Quick (In re Quick),* 2012 WL 260050, at *2 (Bankr. N.D. Ill.) (same); *Ludwig & Robinson, PLLC v. Yelverton (In re Yelverton),* 2009 WL 3857412, at *1 (Bankr. D.D.C.) (same); *Marks v. Hentges (In re Hentges),* 373 B.R. 709, 728–29 (Bankr. N.D. Okla. 2007) (same).

The Fourth Circuit read *Cohen* differently:

> The key in *Cohen* is that the debtor obtained something through his fraud. The Court requires at the threshold that the debtor gain something: "Once it is established that specific money or property has been obtained by fraud, however, 'any debt' arising therefrom is excepted from discharge." *Id.* The Court clarified its holding by stating that subsection (a)(2)(A) "is best read to prohibit the discharge of any liability arising from a debtor's fraudulent *acquisition* of money, property, etc., including an award of treble damages for fraud." *Id.* at 221, 118 S. Ct. 1212 (emphasis added). Admittedly, the Court states several times that the subsection "bars the discharge of *all* liability arising from fraud," but in each example the Court uses to illustrate its point, the debtor has fraudulently obtained money or property from the creditor. *Id.* at 222, 118 S. Ct. 1212 (emphasis added). Although *Cohen* expands the notion of debt in the context of the fraud exception, it still requires that the debtor have obtained something from the creditor for that debt to qualify for the exception.

*Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 221-22 (4th Cir. 2007).

Applying § 523(a)(2)(A) was not simplified by the Supreme Court's decision in *Husky Intern. Electronics, Inc. v. Ritz,* 136 S. Ct. 1581 (2016). In *Husky*, the Court held that, at least for fraudulent conveyances (ruled a type of "actual fraud"), it is not necessary to show that a creditor relied on the debtor's misrepresentations, 136 S. Ct. at 1586, nor to show that the fraud "induc[ed] a creditor to extend a debt." *Id.* at 1587.[4] The ruling, if applied to other types of "actual fraud," could cast doubt on whether a debt must "arise from" the fraud to be nondischargeable, and whether there must be a receipt of benefits. To date, however, it appears that *Husky's* decision has

---

[4] *See also In re Thompson*, 555 B.R. 1, 10 (10th Cir. BAP 2016) (citing *Husky*, the Tenth Circuit BAP held that in actual fraud cases under § 523(a)(2)(A), there is no requirement that "the debtor's actual fraud induced the creditor to part with property or extend credit").

-8-

been limited to fraudulent transfers. *See, e.g., DZ Bank AG Deutsche Zentral-Genossenschaft Bank v. Meyer*, 869 F.3d 839 (9th Cir. 2017) (ruling that creditor's claim was nondischargeable because it could have been collected but for the debtor's fraudulent transfer of assets). It seems likely that courts will apply *Husky* to the fraudulent transfer subset of "actual fraud" cases, and will continue to apply *Cohen* to the balance of the "actual fraud" cases.

Given *Cohen, Husky,* and the dearth of recent 10th Circuit case law on the "actual fraud" portion of § 523(a)(2)(A), it is difficult to pinpoint the elements of a § 523(a)(2)(A) "actual fraud" claim. Three elements seem indisputable: there must be a valid debt;[5] the debtor must have committed actual fraud;[6] and the debt must have "arisen from" the actual fraud.[7] Less clear is the receipt of benefits element. The Court earlier[8] agreed with *Rountree's* conclusion that *Cohen* preserved, rather than dispensed with, the "receipt of benefits" requirement. The Tenth Circuit BAP, post *Husky*, is of the same view. *See Thompson,* 555 B.R. at 10. *Husky,* which if applied broadly might be viewed as having dispensed with the "receipt of benefits" element, apparently will be confined to fraudulent transfer cases. Thus, despite the scattered, uncertain case law, the

---

[5] *See* §§ 523(a)(2)(A) ("any debt") and 101(12) (definition of "debt"); *see also Cohen,* 523 U.S. at 218 (starts the analysis with determining whether there is "any debt.").

[6] *Husky*, 136 B.R. at 1588; *Thompson,* 555 B.R. at 10-11. The Tenth Circuit BAP has held that "actual fraud" includes "a scheme to deprive or cheat another of property or legal right." *Diamond v. Vickery (In re Vickery)*, 488 B.R. 680, 690 (10th Cir. BAP 2013). A treatise states that "Actual fraud consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." 4 *Collier on Bankruptcy* ¶ 523.08[1][e] (16th ed.).[7] *Cohen,* 523 U.S. at 215, 218; *Thompson*, 555 B.R. at 10, 14. The likely standard for "arising from" is proximate cause. *See, e.g., In re Steward,* 2017 WL 4842366, at *2 (Bankr. D.D.C.) (only debts proximately arising from the obtaining of property by fraud are nondischargeable); *In re Musgrave,* 2011 WL 312883, at *9-10 (10th Cir. BAP 2011) (using proximate causation to determine if the fraud caused the damage).

[7] *Cohen,* 523 U.S. at 215, 218; *Thompson*, 555 B.R. at 10, 14. The likely standard for "arising from" is proximate cause. *See, e.g., In re Steward,* 2017 WL 4842366, at *2 (Bankr. D.D.C.) (only debts proximately arising from the obtaining of property by fraud are nondischargeable); *In re Musgrave,* 2011 WL 312883, at *9-10 (10th Cir. BAP 2011) (using proximate causation to determine if the fraud caused the damage).

[8] *O'Brien v. Montoya (In re Torres-Montoya),* 580 B.R. 556, 563 (Bankr. D.N.M. 2017).

Court reiterates its holding that "receipt of benefits" is a necessary element of a § 523(a)(2)(A) claim.

Finally, there is the question whether, to prevail on a § 523(a)(2)(A) claim, a creditor must show that at least some of the benefits garnered by the debtor came from the creditor. The Court previously opined to that effect. 580 B.R. at 564. This view is contrary to *Thompson,* which explicitly held that "there is no requirement that the debt be for something the debtor obtains from the creditor." 555 B.R. at 12. Upon further review of the statute and case law,[9] the Court agrees with *Thompson,* and disagrees with its prior conclusion on this issue.[10] Given *Cohen's* decoupling of "debts" from "money . . . obtained by . . . actual fraud," there is nothing in the statute requiring that the money obtained by the fraud come from the creditor.

C.      Sufficiency of Plaintiff § 523(a)(2)(A) Claim.

1.      Is there a debt? As an initial matter, Plaintiff must allege that he has a valid claim against the Defendant. The allegations in the amended complaint are sufficient for this purpose. Plaintiff alleges that Defendant willfully and maliciously injured him and caused him damages, in an amount to be determined at trial. Plaintiff also alleged that he had previously been awarded a

---

[9] For example, the *Rountree* decision, while it states twice that the benefit must come from the creditor, 478 F.3d at 222, omits that requirement in its final holding, instead stating that "the debtor must obtain something through fraud for the exception to apply." Id.

[10] A court has plenary power to revisit and amend interlocutory orders as justice requires. *Trujillo v. Board of Education of the Albuquerque Public Schools,* 470 F. Supp. 2d 1270, 1275 (D.N.M. 2005), *aff'd and remanded on other grounds,* 212 Fed. Appx. 760 (10th Cir. 2007) (applying the discretionary standard and determining that it was in the interests of justice to grant the motion); *Stoffels ex rel. SBC Telephone Concession Plan v. SBC Communications,* 677 F.3d 720, 728–29 (5th Cir. 2012) ("[A] trial court is free to reconsider and reverse interlocutory orders for any reason it deems sufficient ...."). The reconsideration can be done *sua sponte.* Fed. R. Civ. P. 54(b). *See also United States v. Young,* 657 F.2d 246 (10th Cir. 1980); *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991); *Becker v. Ute Indian Tribe of Uintah,* 2018 WL 2002476, at *2-3 (D. Utah 2018); *Beltran v. InterExchange, Inc.,* 2018 WL 1704633, at *2-3 (D. Colo. 2018) ("a district court may reconsider its own interlocutory order, sua sponte or on motion, at any time prior to the entry of final judgment pursuant to Federal Rule of Civil Procedure 54(b)").

$576,000 state court judgment against Defendant, although the judgment was later reversed so the trial court could take evidence on the timeliness of Plaintiff's complaint.

    2.    <u>Actual fraud</u>. Next, Plaintiff must allege that Defendant committed actual fraud. Plaintiff's allegations are sufficient in this regard. Plaintiff alleges that Defendant intentionally brought a false claim against him, intentionally failed to serve him with process, and maneuvered subsequent events so Mr. Mitchell could obtain a substantial money judgment against Plaintiff without Plaintiff's knowledge or ability to defend himself. Together, the allegations portray an "actual fraud."

    3.    <u>Does the debt arise from the actual fraud</u>? Third, Plaintiff must allege that his claim "arose from" Defendant's actual fraud. Plaintiff's allegations are sufficient to satisfy the "arising from" requirement.

    4.    <u>Did Defendant obtain money, etc. by his actual fraud</u>? The amended complaint alleges that Defendant benefited by his actual fraud, both by receiving attorney fees from his client's inheritance, and also by receiving attorney fees when his client settled with Santa Fe County. These allegations satisfy the "receipt of benefits" element.

The Court holds that the claim survives Defendant's Rule 12(b)(6) challenge.

### III.    CONCLUSION

Plaintiff's complaint states a valid cause of action under § 523(a)(2)(A). Defendant's motion to dismiss the claim under Rule 12(b)(6) therefore will be denied. The Court will enter a separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: May 4, 2018

Copies to: counsel of record